UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
BARBARA ZINNAMON,   :   08-CV-02155 (ARR)(LB)
  :
               Plaintiff,   :
-against-   :   NOT FOR PRINT OR
  :   ELECTRONIC
New York City Civilian Complaint Review Board,   :   PUBLICATION
  :
               Defendant.   :   OPINION AND ORDER
------------------------------------------------------------------ X

ROSS, United States District Judge:

    Plaintiff Barbara J. Zinnamon,[1] proceeding pro se, brought suit against the New York City Civilian Complaint Review Board ("CCRB") alleging that she suffered employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, et seq. ("ADA"). (Compl. at 1.) Defendant CCRB moves for summary judgment dismissing plaintiff's complaint on the grounds that plaintiff failed to make out a prima facie case of discrimination, and in the alternative, even if plaintiff stated a prima facie case she has failed to provide any evidence to overcome defendant's legitimate business reasons for not offering her a job

---

[1] Plaintiff, Barbara J. Zinnamon, is familiar to this court, having commenced numerous employment discrimination actions in this district. See Zinnamon v. T-Mobile, No. 09-CV-3273 (ARR); Zinnamon v. NYS Dep't of Educ., No. 08-CV-5149 (ARR); Zinnamon v. NYC Dep't of Social Servs., No. 08-CV-5266 (ARR); Zinnamon v. Outstanding Bus Co., No. 08-CV-1787 (ARR); Zinnamon v. PCF Newspaper, No. 08-CV-1400 (ARR); Zinnamon v. NYC Dep't of Educ., No. 08-CV-1399 (ARR); Zinnamon v. Bridge Security, No. 08-CV-1398 (ARR).

1

interview and prove that she suffered discrimination. (Def.'s Mem. Supp. Summ. J. at 2-3.) CCRB also argues that plaintiff's complaint should be dismissed as patently frivolous. (Id. at 11-12.) Plaintiff responded in opposition. For the reasons detailed below, CCRB's motion is granted.

## BACKGROUND

In 2006, plaintiff applied for the job of Entry Level I Investigator at CCRB. (Zinnamon Dep. at 95.) She submitted a short handwritten cover letter dated June 15, 2006 by facsimile. (Def.'s Mot. Summ. J. Ex. D; Diner Aff. ¶ 2.) The letter stated: "I . . . have read your qualifications of becoming a (CCRB) Entry Level Investigator, and I am interested in this type of position (see my two page resume attached). Feel free to contact me via, fax, mail, or e-mail." (Def.'s Mot. Summ. J. Ex. D.) With the cover letter, plaintiff submitted her three page resume and her two "degrees" from the universities Golden Brown University and Tennessee Three University. (See Def.'s Mot. Summ. J. Exs. E, F; Zinnamon Dep. at 96-97.) The materials submitted by plaintiff did not give any indication of her race, religion, national origin, or disability status, and nowhere stated her age. (See Def.'s Mot. Summ. J. Exs. D, E, F; Diner Aff. ¶ 10.) After receiving plaintiff's application, the CCRB sent plaintiff a form postcard thanking her for her recent inquiry about employment and informing her that "[i]f your resume is selected in the review process, you will be contacted for an interview." (See Diner Aff. ¶ 4; Diner Aff. Ex. A.) Both parties agree that plaintiff was not interviewed for the position and that her application never resulted in her working at the CCRB. (See Diner Aff. ¶ 3; Zinnamon Dep. at 97, 102.)

Whereas the CCRB has provided evidence that plaintiff's application was rejected, see Diner Aff. ¶ 3, plaintiff testified that in 2006, by phone call, she "was told [she] had the job" by someone in the personnel division. (Zinnamon Dep. at 95-96.) Plaintiff could not, however, identify the name of the person who informed her that she was hired. (Zinnamon Dep. at 95-96.) Plaintiff explained that although she was offered the job, she never actually worked at the CCRB because she "was never called to work." (Zinnamon Dep. at 97.) She testified that she "made an appearance" at the CCRB and "spoke to one of the gentleman who [is] no longer working there," who told her that "[w]e're going to be calling you for a job soon." (Zinnamon Dep. at 97.) According to plaintiff, following her in-person visit to the CCRB, she "called up to find out . . . exactly what was going on, and then I had gotten a call [saying] that we're going to be calling [her] in for employment because they already received the information and they like it." (Zinnamon Dep. at 98.) Plaintiff testified that after receiving the phone call she waited and "nothing took place." (Id.)

Plaintiff alleged in her complaint that she also applied for the Entry Level I Investigator position "several times" after June 2006. (Compl. ¶ 8.) Plaintiff later amended her cover letter to the CCRB by adding to it the additional dates of March 2, 2007 and May 27, 2007 and resubmitting the letter. (See Def.'s Mot. Summ. J. Ex. D.) This court previously dismissed as time-barred all of plaintiff's claims relating to her June 15, 2006 job application, and therefore plaintiff's only remaining claims in this action relate to her purported applications for employment in March 2007 and May 2007. See Zinnamon v. New York City Civilian Complaint Review Bd., 08-CV-2155 (E.D.N.Y. Nov. 18, 2008) (Dkt No. 20).

3

Plaintiff claims that the CCRB discriminated against her on account of her race, gender, religion, national origin, age, and disability by failing to hire and promote her.[2] (Compl. ¶¶ 4, 7.) Plaintiff asserted in her complaint that her race is black, her gender is female, her religion is Christian, and her national origin is Protestant; her complaint did not identify her age or her disability. (Compl. ¶ 7.) She testified that her religion is Protestant. (Zinnamon Dep. at 109.) During her deposition, plaintiff initially refused to answer questions asking how she was discriminated against based on her race, gender, religion, and disability. (See Zinnamon Dep. at 89-95.) Plaintiff testified that she was never told by any employee of the CCRB that she was not hired because of her race, gender, or religion. (Zinnamon Dep. at 110.)

As evidence of discrimination based on her race and national origin, plaintiff testified:

> I seen people that were approximately – I asked questions, individuals, and asked them, "When did you apply for the job?" Around the same time I did. "Did they call you just recently?" "Yes." But I'm looking at the nationalities that were there over the nationality that I was, and they were hired."

(Zinnamon Dep. at 102-03.) Plaintiff followed this testimony by explaining that her nationality is "black" and the people hired were "other than black," "other nationalities," and "I told you that this is what they were, other than what I am." (Zinnamon Dep. at 103, 109.) Plaintiff also

---

[2] On the pro se complaint form that plaintiff used to initiate this action, plaintiff checked only the boxes corresponding to "race," "gender/sex," "religion," and "national origin" in the section asking her to identify the basis of her discrimination claims. (Compl. ¶ 7.) Plaintiff did not check the boxes next to "age" or "disability." (Id.) Plaintiff did, however, check the boxes in an earlier section of the pro se complaint form identifying that she was bringing claims against the CCRB under the ADEA and ADA, in addition to her Title VII claims. (Compl. at 1.) For that reason, this court previously held that plaintiff's complaint put the CCRB on notice of her age and disability discrimination claims. Zinnamon, 08-CV-2155 (E.D.N.Y. Nov. 18, 2008) (Dkt No. 20).

4

testified that the individuals hired for the CCRB position were both male and female. (Zinnamon Dep. at 110.) Plaintiff testified that she was able to find and speak to the people hired for the position to which she applied by doing "research" and "go[ing] to check into certain locations of places where you know that they have personnel divisions." (Zinnamon Dep. at 103-04, 108.) She testified that prior to August 2006 she spoke to a few people who were hired by the CCRB but she did not know their names. (Zinnamon Dep. at 104, 109.) She testified that she knew that the individuals of nationalities other than hers were hired for the position to which she applied because the individuals she spoke to told her that the CCRB had only one job available at the time they were hired. (Zinnamon Dep. at 108.)

Regarding her claim of discrimination based on religion, she testified that she did not know the religions of the people she spoke to who were hired for the CCRB job position because "I didn't ask them that." (Zinnamon Dep. at 109.) Plaintiff acknowledged that her claim based on religion would be "a little bit, maybe, difficult to deal with . . . because like I said, you asked me before the people that I spoke to, did I ask them pertaining to their religion, because like I said, they may not have even had a religion, so that's one of the categories that I never really got involved in." (Zinnamon Dep. at 113.) Plaintiff testified that "I don't believe that I did" inform CCRB of her religion. (Zinnamon Dep. at 113-14.)

Regarding her claim of disability discrimination, plaintiff testified that she suffers from spina bifida and a heel spur. (Zinnamon Dep. at 85, 119.) When plaintiff was asked whether at any time she informed the CCRB that she had a disability, she answered "I'm not going to answer that." (Zinnamon Dep. at 92.) There is no deposition testimony as to the age of those

allegedly hired.

In contrast, CCRB's Deputy Director of Personnel, Ellen Diner, wrote in a sworn affidavit that plaintiff "was lawfully rejected as a candidate because she failed to illustrate that she was qualified for the position in any way, from her unprofessional hand-written cover letter up to her resume." (Diner Aff. ¶ 10.) Diner asserts that the position of Entry Level I Investigator is a "writing position," involving the preparation of investigative reports that are often used by the Police Commissioner and in legal proceedings, and also requires the ability to multi-task by handling cases, scheduling and interviewing complainants and officers, and scheduling photo arrays. (Diner Aff. ¶ 6.) According to Diner, plaintiff's materials did not meet the requirements for an interview because her handwritten cover letter was "unprofessional and sloppy," contained "grammatical errors and misplaced punctuation marks," and did not include "any information describing how she is qualified for the position." (Diner Aff. ¶ 7.) In Diner's opinion, plaintiff's resume, which listed mostly clerical positions, suggested she had no relevant job experience. (Diner Aff. ¶ 8.) Diner also asserts that if plaintiff had been granted an interview, the interviewer would have investigated plaintiff's education, and plaintiff would have been disqualified for the job because the schools she claims to have graduated from – Tennessee Three University and Golden Brown University – do not exist.[3] (Diner Aff. ¶ 9.)

---

[3] The court has considered CCRB's assertion that plaintiff falsified her degrees and therefore lied in her job application, and by extension, lied during her deposition. (See Def.'s Mem. Supp. Summ. J. at 9, 11.) Plaintiff's resume states that she earned a Master of Education degree from Golden Brown University in Illinois and a Master of Business Administration degree from Tennessee Three University in Tennessee. See Def.'s Mot. Summ. J. Ex. E. The accompanying "diplomas" from the two universities bear the identical graphic depicting each university's campus, and both are signed by a University President named "Les N. Toomy, Jr." and a

6

CCRB claims that plaintiff never communicated her protected status to the CCRB in her submitted job application materials or during her follow-up phone calls, and that the materials she submitted failed to indicate that she was qualified for the position. (Def.'s Mem. Supp. Summ. J. at 2.) CCRB has moved for summary judgment on the basis that plaintiff has failed to make out a <u>prima facie</u> case, and in the alternative, if plaintiff has stated a <u>prima facie</u> case, she has presented no evidence of discrimination. (<u>Id.</u> at 3.)

## DISCUSSION

A. <u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see also</u> <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). "'While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.'" <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Graham v.</u>

---

Chairman of the Board of Trustees named "I. Curry Favor." <u>See</u> Def.'s Mot. Summ. J. Ex. F. The court finds it incredible that both universities - purportedly located in different states - have the same campus, the same Chairman of the Board of Trustees, and the same President. The court notes that plaintiff is well aware that she "cannot give false information in dealing with the judicial court system." (Pl.'s Mem. Opp. Summ. J. at 2.) The court is concerned about plaintiff's representations and cautions plaintiff that her submissions to this court must be truthful. Defendant's assertion that plaintiff lied about her educational background, however, does not need to be resolved for the purposes of this motion.

7

Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotations omitted)). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In addressing a motion for summary judgment, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). Summary judgment should be granted "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party." Cruden v. Bank of N.Y., 957 F.2d 961, 975 (2d Cir. 1992). The moving party bears the initial burden of demonstrating that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). If the movant successfully shoulders its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. "The nonmoving party must produce evidence in the record and 'may not simply rely on conclusory statements or on contentions that the affidavits supporting the motions are not credible.'" Jenkins v. New York State Banking Dep't, Nos. 07-CV-6322, 07-CV-11317, 2010 WL 2382417, at * 1 (S.D.N.Y. June 14, 2010) (quoting Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993)). Further, the evidence produced by the nonmoving party in opposition to summary judgment must "by affidavits or as otherwise provided . . . set out specific facts showing a genuine issue for trial" and must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1)-(2); see also Sarno v. Douglass Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999). Thus, the nonmoving party "must point to more than a 'scintilla' of supporting evidence to defeat summary judgment."

Hargett v. Metro. Transp. Auth., No. 09-4044-CV, 2010 WL 2465544, at *1 (2d Cir. June 16, 2010) (citing Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008)). In addition, the court liberally reviews pro se submissions "to raise the strongest arguments that they suggest." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks

B.  Plaintiff Lacks Sufficient Evidence to Survive Summary Judgment on her Title VII and ADEA Claims

1.  Plaintiff's Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims under Title VII are evaluated by the three-part burden shifting analysis established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973). See, e.g., Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Plaintiff bears the initial burden of making out a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she is competent to perform the job or is performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination. See, e.g., Mario v. P & C Food Markets, Inc., 313 F.3d 758, 767 (2d Cir. 2002). Plaintiff's burden of proof at this stage has been characterized as "'minimal' and 'de minimus,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quoting Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)), but "it is not non-existent,"

Almond v. Westchester County Dep't of Corr., 425 F. Supp. 2d 394, 399 (S.D.N.Y. 2006).

If plaintiff is able to make out a prima facie case, the burden shifts to the CCRB to identify "'some legitimate, nondiscriminatory reason'" for its action. Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (quoting McDonnell Douglas, 411 U.S. at 802). If CCRB meets this burden, the burden shifts back to the plaintiff to show that CCRB's "reasons were 'false and that discrimination was the real reason.'" See Bryant v. Delphi Auto. Sys. Corp., No. 08-CV-6215, 2010 WL 1063740, at *6 (W.D.N.Y. March 22, 2010) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). Speculation and conclusory allegations of discrimination are not sufficient to meet this burden. Das v. Our Lady of Mercy Med. Ctr., No. 00-CV-2574, 2002 WL 826877, at *7 (S.D.N.Y. Apr. 30, 2002), aff'd, 56 F. App'x 12 (2d Cir. 2003). Instead, plaintiff must come forward with "concrete particulars." R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984). On a motion for summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997).

Assuming, arguendo, that plaintiff is able to satisfy her initial burden, CCRB's motion must be granted because plaintiff is unable to satisfy her burden of showing that CCRB's proffered reasons for its actions were false and that discrimination was the real reason that plaintiff's job application was rejected. In response to plaintiff's allegations of discrimination, CCRB contends that plaintiff was not interviewed and hired for the position of Entry Level I

10

Investigator because her application failed to illustrate that she was qualified for the position. CCRB asserts that the position was a writing position that also involved multi-tasking, and plaintiff not only failed to explain her qualifications for the particular position in her cover letter but her resume failed to list any relevant job experiences as her prior jobs were all clerical in nature. CCRB also asserts that plaintiff exhibited that she was not qualified for the position because her cover letter was handwritten and contained grammatical errors and misplaced punctuation marks, and plaintiff represented that she graduated from two universities that do not exist. Furthermore, CCRB asserts that it could not have discriminated against plaintiff in violation of Title VII because plaintiff's application materials provided no indication of any of her protected characteristics.

Plaintiff, in response, is unable to show that CCRB's proffered explanations are pretextual and that discrimination of any kind was the real reason that she was not interviewed and hired. Plaintiff's only evidence is her own deposition testimony, which is devoid of any concrete evidence of discrimination, and instead contains only speculation and conclusory allegations. In addition, most of plaintiff's evidence of discrimination is inadmissible hearsay.

First, CCRB is entitled to summary judgment on plaintiff's racial and national origin discrimination claims, because plaintiff failed to provide any admissible evidence that discrimination based on her race and her national origin – which plaintiff identified during her testimony is "black" – was the real reason that CCRB did not interview and hire her. Plaintiff's only evidence that individuals who were "other than black" were hired for the position to which she applied came from her conversations with individuals who "told her" that they had been

hired to fill the applied for position. Plaintiff's statements as to what she "was told" are hearsay that would not be admissible at a trial. See Fed. R. Civ. P. 56; Sarno v. Douglass Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).

Similarly, CCRB is entitled to summary judgment on plaintiff's gender discrimination claim because plaintiff failed to provide any evidence that discrimination based on gender was the reason she was not hired. Plaintiff testified that both males and females were hired for the Entry Level I Investigator position. Her testimony does not suggest any gender bias or preferential treatment of men in CCRB's hiring process. See Fleming v. Maxmara USA, Inc., 371 F. App'x 115, 117 (2d Cir. 2010) (holding that black female employee failed to establish prima facie case of discrimination in connection with her termination where she was replaced by someone in her protected class, another black female). Plaintiff has proffered no evidence that would permit a reasonable fact-finder to conclude that the reasons proffered by CCRB for not hiring plaintiff were false and a pretext for gender discrimination.

CCRB is also entitled to summary judgment on plaintiff's claim of discrimination based on her religion because during her deposition testimony plaintiff admitted that she did not inform CCRB that she is Protestant, she did not know the religions of the individuals hired for the position to which she applied, and she acknowledged that her religion discrimination claim was weak. Thus, plaintiff's remaining bare assertion that she was discriminated against based on her religion is evidence of little more than plaintiff's "subjective belief that [s]he was not treated fairly" and "is simply not enough to demonstrate pretext." See Bryant v. Delphi Auto. Sys. Corp., No. 08-CV-6215, 2010 WL 1063740, at *6 (W.D.N.Y. Mar. 22, 2010) (citing Silva v.

12

Peninsula Hotel, 509 F. Supp. 2d 364, 386 (S.D.N.Y. 2007)).

2. Plaintiff's ADEA Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Claims under the ADEA, like claims under Title VII, are analyzed under the three-part burden shifting framework developed in McDonnell Douglas. See Cross v. N.Y. City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005) (applying the McDonnell Douglas burden shifting analysis to ADEA claims). However, since the recent Supreme Court decision in Gross v. FBL Financial Services, 129 S. Ct. 2343 (2009), after an employer proffers a legitimate, non-discriminatory reason for its employment decisions, ADEA plaintiffs are required to show that age discrimination was actually the but-for cause of the adverse employment action. Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (citing Gross, 129 S. Ct. 2343 at 2352). In contrast, claimants under Title VII need only show that age was a motivating factor. See Gross, 129 S. Ct. 2343 at 2349. Plaintiff cannot prove that discrimination was the but-for cause of any adverse employment action and therefore cannot overcome plaintiff's legitimate, non-discriminatory reasons for not hiring plaintiff.

The only weak record evidence in support of plaintiff's allegation that she was discriminated against on the basis of her age is the fact that plaintiff's resume, which was faxed to CCRB with her cover letter, lists her employment dating back to at least 1982.[4] See Def.'s

---

[4] In the context of this action, the court is unaware of plaintiff's actual age. Plaintiff did not identify her age in her complaint or during her deposition testimony.

Mot. Summ. J. Ex. E. If CCRB assumed plaintiff was 16 in 1982, plaintiff was at least 41 in 2007, the time at which she applied for employment with defendant. See 29 U.S.C. § 631(a) (The ADEA applies to individuals who are at least forty years of age.) However, plaintiff's job application never explicitly informed CCRB of her age. Plaintiff never once in her testimony explained the basis for her belief that CCRB did not hire her because of her age. She also did not testify about the ages of the individuals hired for the Entry Level I Investigator position and there is no evidence in the record about the ages of the individuals hired for the position. The court therefore has no information about whether the individuals hired were younger than plaintiff. Thus, as with plaintiff's Title VII claims, plaintiff failed to point to any "concrete particulars" as required to survive a motion for summary judgment, see R.G. Group, Inc., 751 F.2d at 77, and instead her testimony does little more than illustrate her subjective belief that she was not treated fairly. See Bryant, 2010 WL 1063740, at *6 (citing Silva, 509 F. Supp. 2d at 386). Defendant's motion for summary judgment is granted.

C.     Plaintiff Failed To Plead a Prima Facie Case of Discrimination Under the ADA

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring . . . of employees." 42 U.S.C. § 12112(a). Claims under the ADA are also analyzed under the three-part burden shifting framework of McDonnell Douglas. See McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). A "plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason

14

is a pretext." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (internal quotations omitted).

To plead a prima facie case under the ADA, plaintiff must show that (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with our without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability or perceived disability. Kinneary v. City of N. Y., 601 F.3d 151, 155-56 (2d Cir. 2010).

The CCRB is entitled to summary judgment because plaintiff is unable to plead a prima facie case of discrimination under the ADA. Plaintiff provided insufficient evidence that she is a "qualified individual" with a "disability" within the meaning of the ADA. See 42 U.S.C. § 12112(a).[5] A plaintiff can demonstrate that she has a disability within the meaning of the ADA in any one of three ways. She can show that she (A) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (B) has a "record of such an impairment"; or (C) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). The statute defines major life activities as including "caring for oneself, performing manual

---

[5] The ADA Amendments Act of 2008 ("ADAA"), which became effective on January 1, 2009, recently expanded the class of individuals entitled to protection under the ADA. The Second Circuit has held that the ADAA does not apply to conduct that occurred prior to the effective date of the statute. See, e.g., Ragusa v. Malverne Union Free Sch. Dist., No. 08-5367-CV, 2010 WL 2490966, at *1 n.2 (2d Cir. June 21, 2010) ("[W]e here apply the version of the statute in effect during the time period at issue, which ended with Ragusa's termination on June 30, 2005.").

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

To determine if an individual qualifies as disabled under the ADA, the Second Circuit applies the three-step approach taken by the Supreme Court in Bragdon v. Abbott, 52 U.S. 624 (1998). See Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 147 (2d Cir. 2002). Under this approach,

> plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified.

Id. (internal citations omitted). While plaintiff testified that she suffers from spina bifida and a heel spur, she has not identified any life activities that are impaired by these conditions. In fact, not only did plaintiff fail to identify a major life activity that was impaired and substantially limited, she also testified during her deposition that she was able to perform considerable amounts of volunteer work every week despite her alleged disabilities. See Zinnamon Dep. at 56-67, 72-73, 76-81, 119-120. Plaintiff testified that she currently volunteers for forty to forty-five hours per week for the New York State and City Departments of Education, operates her own printing business, teaches students who require home schooling, proctors exams for a GED program, volunteers for thirty-five hours per week for the New York City Housing Authority, and runs a security guard training school. See id. at 56-67, 72-73, 76-82. Plaintiff's level of activity indicates that she is not substantially limited in any major life activity. Plaintiff never

16

once alleged or testified that she is regarded as having a physical or mental impairment that substantially limits a major life activity or has a record of such an impairment. Thus, plaintiff failed to make out a <u>prima</u> <u>facie</u> case of discrimination under the ADA.

## CONCLUSION

For the foregoing reasons, CCRB's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant and close the case.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated: August 30, 2010
Brooklyn, New York

SERVICE LIST:

>Pro Se Plaintiff
>Barbara J. Zinnamon
>345 Livonia Avenue
>Apt. 4F
>Brooklyn, NY 11212

>Defendant's Attorney
>Jamie M. Zinaman, Esq.
>New York City Law Department
>100 Church Street
>New York, NY 10007

cc: Magistrate Judge Lois Bloom

18